UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK



DANIEL KRUPINSKI,

                Plaintiff,

-v-

LABORERS EASTERN REGION
ORGANIZING FUND,

                Defendant.

No. 16-cv-9923 (RJS)
OPINION AND ORDER

RICHARD J. SULLIVAN, District Judge:

Plaintiff Daniel Krupinski ("Krupinski") brings claims for unpaid overtime wages under the New York Labor Law ("NYLL") and for statutory damages under New York's Wage Theft Prevention Act ("WTPA") against his former employer, Defendant Laborers Eastern Region Organizing Fund ("LEROF"). Now before the Court are (1) LEROF's motion for summary judgment (Doc. No. 11), and (2) Krupinski's cross-motion for partial summary judgment on the WTPA claim (Doc. No. 17). For the reasons set forth below, LEROF's motion is granted and Krupinski's motion is denied.

I. BACKGROUND

This is Krupinski's second attempt to persuade the Court that he was not a "bona fide administrative employee" exempt from statutory overtime requirements when he worked as an Organizer for LEROF. The Court rebuffed his first attempt several months ago, granting summary judgment for LEROF after finding that Krupinski was indeed an exempt administrative employee under the Fair Labor Standards Act ("FLSA"), the NYLL's federal analog. *Krupinski v. Laborers E. Region Org. Fund*, No. 15-cv-982 (RJS), 2016 WL 5800473 (S.D.N.Y. Oct. 2, 2016) (*Krupinski*

*I*). In that case, the Court found that Krupinski met the FLSA's three-part test for exempt administrative employees: he was compensated on a salary basis, his "primary duty [was] the performance of office or non-manual work directly related to the management or general business operations of [his] employer," and his primary duties also "include[d] the exercise of discretion and independent judgment with respect to matters of significance." 29 C.F.R. § 541.200; *Krupinski I*, 2016 WL 5800473, at *4–9. On the supposition that the parties were not diverse, the Court declined to exercise supplemental jurisdiction over Krupinski's state law claims after dismissing his federal claim. *Id.* at *9–10. Krupinski thereafter brought his NYLL and WTPA claims in New York state court. (*See* Doc. No. 1.) On December 23, 2016, LEROF removed the state court action to this Court, asserting for the first time federal jurisdiction based on diversity of citizenship, since LEROF is a citizen of New Jersey and Krupinski is a citizen of Pennsylvania. (*Id.*) Because *Krupinski I* and the present case concern the same parties and rely on the same factual record, the Court will assume the parties' familiarity with most of the facts and procedural history of both cases and limit its discussion to those facts most relevant to these motions.

A. Facts

LEROF is a non-profit labor management organization that serves as a regional organizing fund for the Laborers International Union of North America ("LIUNA").[1] (Def. 56.1 ¶¶ 1, 4.) LEROF's "core mission is to organize non-union workers to increase membership for the local

---

[1] The following facts are taken from Defendant's Local Civil Rule 56.1 Statement (Doc. No. 14 ("Def. 56.1")), Plaintiff's Counterstatement (Doc. No. 18 ("Pl. 56.1")), the declarations submitted in support of and in opposition to Defendant's motion for summary judgment and Plaintiff's motion for partial summary judgment, and the exhibits attached thereto (Doc. Nos. 15–16, 19–20). Unless otherwise noted, where one party's 56.1 Statement or Counterstatement is cited, the other party does not dispute the fact asserted, has offered no admissible evidence to refute that fact, or merely objects to inferences drawn from that fact. In deciding the parties' cross-motions, the Court also considered Defendant's memorandum of law in support of its motion for summary judgment (Doc. No. 13 ("Def. Mem.")), Plaintiff's memorandum of law in support of his cross-motion for partial summary judgment and in opposition to Defendant's motion (Doc. No. 21 ("Pl. Mem.")), and Defendant's reply in further support of its motion and in opposition to Plaintiff's cross-motion (Doc. No. 23 ("Reply")).

2

unions [in its geographical territory] and thus increase market share for LIUNA as a whole." (*Id.* ¶ 5; *see also id.* ¶ 6.)  To carry out its mission, LEROF "educat[es] workers about the benefits of union membership and campaign[s] to have workers elect to join LIUNA." (*Id.* ¶ 8.)

LEROF employs a staff of about fifty Organizers to run its organizing campaigns.  (*Id.* ¶ 10; *see also id.* ¶ 9 ("The power of LEROF rests in the skills and talents of members who actively participate in organizing campaigns.").)  Organizers' duties "generally include, but are not limited to:  house calling non-union workers; house calling union workers; [performing] committee work; assisting in setting up campaigns; conduct[ing] meetings with workers; mobiliz[ing] and empower[ing] workers; participat[ing] in corporate campaign activities; public speaking; information gathering; rallying; picketing; and leafleting." (*Id.* ¶ 12.)

Krupinski, a graduate of Berkeley College with a bachelor's degree in international business, was employed by LEROF as an Organizer from approximately June 2010 to April 2014, when he was terminated.  (Doc. No. 16, Ex. A ("Pl. Depo.") 48:1–3, 11; Def. 56.1 ¶¶ 28–29, 75.) Krupinski's duties generally corresponded with those listed in LEROF's job description for Organizers.  (Def. 56.1 ¶ 44; Pl. Depo. 23:21–24:23.)  His primary objective was to "[m]otivate," "[e]ducate," and "[t]rain" construction workers and convince non-union workers to join LIUNA. (Def. 56.1 ¶ 45 (quoting Pl. Depo. 24:11–16); *see also* Pl. Depo. 29:7–8 (trying to improve the market share was Krupinski's "job almost . . . every day").)  Krupinski's day-to-day duties consisted mainly of "fieldwork" that included demonstrating at non-union worksites (Def. 56.1 ¶¶ 56–59), educating both union and non-union workers about the benefits of union membership (*id.* ¶¶ 45, 55, 57), speaking with the public about LIUNA's goals (*id.* ¶ 59), conducting house calls to recruit non-union workers (*id.* ¶ 49), and assessing targets for house calls (*id.* ¶¶ 50, 66).

As required by LEROF, Krupinski attended a number of training sessions both before and

during his employment as an Organizer. For his initial training, he participated in LEROF's "Voice 1" and "Voice 2" classes, in which "[O]rganizers are taught labor history, economics, politics[,] and 'house calling,' with an emphasis on simulations and role playing." (*Id.* ¶ 69.) Krupinski later attended LEROF's "Two Day Training," an "intensive training in labor history, economics, politics, immigration, basic labor law and picketing, house-calling, and organizing techniques." (*Id.* ¶ 70; *see also* Pl. Depo. 44:16–45:12, 47:19–22 (indicating that Krupinski attended this training "a dozen" times and eventually served as an assistant teacher).) In addition, LEROF sent Krupinski and other Organizers to outside conferences to learn more about union market share and techniques for job-site demonstrations. (Def. 56.1 ¶ 71; Pl. Depo. 45:13–47:15.) LEROF also offered further training through LEROF University and Cornell University's Industrial Labor Relations School, but Krupinski was terminated before he was able to take advantage of those opportunities. (Def. 56.1 ¶¶ 73–74; Pl. Depo. 47:23–25.) Krupinski suggested, however, that he had less need for further training than some other Organizers, since he already held a bachelor's degree in international business. (Pl. Depo. 48:1–5.)

B. Procedural History

As noted above, Krupinski initiated this action in New York State Supreme Court, New York County, on November 17, 2016, asserting claims under New York state law. (*See* Doc. No. 1.) On December 23, 2016, LEROF removed the case to federal court pursuant to 28 U.S.C. §§ 1441 and 1446. (*Id.*) After a pre-motion conference on January 19, 2017, LEROF filed its motion for summary judgment on January 27, 2017, asserting that Krupinski was an exempt administrative employee under the NYLL and was not entitled to statutory damages under the WTPA. (Doc. Nos. 11–16.) Thereafter, Krupinski filed his opposition and cross-motion for partial summary judgment on February 27, 2017 (Doc. Nos. 17–21), and LEROF filed its reply and opposition to the cross-motion on March 6, 2017 (Doc. No. 23).

## II. LEGAL STANDARD

Under Rule 56(a) of the Federal Rules of Civil Procedure, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). There is "no genuine dispute as to any material fact" where (1) the parties agree on all facts (that is, there are no disputed facts); (2) the parties disagree on some or all facts, but a reasonable fact-finder could never accept the nonmoving party's version of the facts (that is, there are no genuinely disputed facts), *see Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); or (3) the parties disagree on some or all facts, but even on the nonmoving party's version of the facts, the moving party would win as a matter of law (that is, none of the factual disputes are material), *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

In determining whether a fact is genuinely disputed, the court "is not to weigh the evidence but is instead required to view the evidence in the light most favorable to the party opposing summary judgment, to draw all reasonable inferences in favor of that party, and to eschew credibility assessments." *Weyant v. Okst*, 101 F.3d 845, 854 (2d Cir. 1996). Nevertheless, to show a genuine dispute, the nonmoving party must provide "hard evidence," *D'Amico v. City of New York*, 132 F.3d 145, 149 (2d Cir. 1998), "from which a reasonable inference in [its] favor may be drawn," *Binder & Binder PC v. Barnhart*, 481 F.3d 141, 148 (2d Cir. 2007) (internal quotation marks omitted). "Conclusory allegations, conjecture, and speculation," *Kerzer v. Kingly Mfg.*, 156 F.3d 396, 400 (2d Cir. 1998), as well as the existence of a mere "scintilla of evidence in support of the [nonmoving party's] position," *Anderson*, 477 U.S. at 252, are insufficient to create a genuinely disputed fact. A moving party is "entitled to judgment as a matter of law" on an issue if (1) it bears the burden of proof on the issue and the undisputed facts meet that burden; or (2) the nonmoving party bears the burden of proof on the issue and the moving party "'show[s]' – that is,

point[s] out . . . – that there is an absence of evidence [in the record] to support the nonmoving party's [position]." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).

When cross-motions for summary judgment are filed, "the standard is the same as that for individual motions for summary judgment." *Nat. Res. Def. Council v. Evans*, 254 F. Supp. 2d 434, 438 (S.D.N.Y. 2003) (citing *Morales v. Quintel Entm't, Inc.*, 249 F.3d 115, 121 (2d Cir. 2001)). "The court must consider each motion independently of the other and, when evaluating each, the court must consider the facts in the light most favorable to the non-moving party." *Id.* (citing *Morales*, 249 F.3d at 121).

### III. DISCUSSION

#### A. NYLL Claim

Krupinski first asserts a claim for unpaid overtime wages under the NYLL. Like the FLSA, the NYLL generally requires that employees be paid overtime for any work done in excess of forty hours per week, but it carves out an exemption from the overtime requirement for "bona fide . . . administrative" employees. *See* 29 U.S.C. §§ 207(a)(1), 213(a)(1); 12 NYCRR §§ 142–2.2, 142–2.14(c)(4)(ii); N.Y. Lab. Law § 651. The FLSA and the NYLL define "administrative employee" almost identically: both require that such an employee (1) be paid on a salary basis, (2) perform, as his "primary duty," office or non-manual work directly related to his employer's management or general operations, and (3) exercise "discretion and independent judgment." 29 C.F.R. § 541.200; 12 NYCRR § 142–2.14(c)(4)(ii). The NYLL, however, includes a fourth element that the FLSA lacks: an administrative employee must also (4) "regularly and directly assist[] an employer . . . or . . . perform[], under only general supervision, work along specialized or technical lines requiring special training, experience, or knowledge." 12 NYCRR § 142–2.14(c)(4)(ii)(c).

Krupinski concedes that he was paid on a salary basis, but contends that his work as an Organizer did not satisfy the other three requirements. However, Krupinski is collaterally estopped

6

from disputing the "primary duty" and "discretion and independent judgment" elements of his NYLL claim. Under federal principles of issue preclusion, which govern here, *see Marvel Characters, Inc. v. Simon*, 310 F.3d 280, 286 (2d Cir. 2002) (applying federal law "in determining the preclusive effect of a federal judgment"), a party is prevented from "relitigating in a subsequent action an issue of fact or law that was fully and fairly litigated in a prior proceeding," *id.* at 288. Specifically, "[c]ollateral estoppel applies when: '(1) the identical issue was raised in a previous proceeding; (2) the issue was actually litigated and decided in the previous proceeding; (3) the party had a full and fair opportunity to litigate the issue; and (4) the resolution of the issue was necessary to support a valid and final judgment on the merits.'" *Id.* at 288–89 (quoting *Boguslavsky v. Kaplan*, 159 F.3d 715, 720 (2d Cir. 1998)).[2]

With respect to the first element for collateral estoppel, there is simply no question that the "primary duty" and "discretion and independent judgment" issues raised here are identical to those raised in *Krupinski I*. As just observed, the relevant federal and state provisions are virtually identical. The differences in wording are negligible – the NYLL specifies "office or nonmanual field work," "management policies or general operations," and "customar[y] and regular[] exercise[] [of] discretion and independent judgment," whereas the FLSA lists "non-manual work," "management or general business operations," and "discretion and independent judgment with respect to matters of significance" – and courts have consistently held that the provisions are substantively indistinguishable. *See, e.g.*, *Ramos v. Baldor Specialty Foods, Inc.*, 687 F.3d 554, 556 n.1 (2d Cir. 2012) (treating FLSA and NYLL administrative exemptions interchangeably); *Reiseck v. Universal Commc'ns of Miami, Inc.*, 591 F.3d 101, 104–05 (2d Cir. 2010) (same); *Sethi*

---

[2] Although LEROF discusses *res judicata* rather than collateral estoppel (Reply at 2–5), and Krupinski does not address either form of preclusion, district courts are "free to raise [the issue of collateral estoppel] *sua sponte*, even without permitting an adversely affected party an opportunity to argue the issue." *Smeraldo v. City of Jamestown*, 512 F. App'x 32, 34 (2d Cir. 2013) (citing *Curry v. City of Syracuse*, 316 F.3d 324, 331 (2d Cir. 2003)).

*v. Narod*, 974 F. Supp. 2d 162, 183–84 (E.D.N.Y. 2013) (finding administrative employee exemptions "substantially similar" under NYLL and FLSA); *Torres v. Gristede's Operating Corp.*, 628 F. Supp. 2d 447, 455 n.4 (S.D.N.Y. 2008) ("Courts regularly look to the FLSA when considering the scope of overtime exemptions under the NYLL."); *cf. Marcus v. AXA Advisors, LLC*, 307 F.R.D. 83, 94–95 (E.D.N.Y. 2015) (declining to distinguish between FLSA's "customarily and *regularly*" and NYLL's "customarily and *predominantly*" when interpreting the statutes' respective outside salesperson exemptions).

There is likewise no question that those two issues were actually litigated and decided, and that Krupinski had a full and fair opportunity to litigate both of them. In *Krupinski I*, the parties contested each element of the FLSA's test for a bona fide administrative employee on cross-motions for summary judgment. After a lengthy analysis, the Court found, on the undisputed facts, that Krupinski's job as an Organizer met both the "primary duty" and "discretion and independent judgment" criteria. *Krupinski I*, 2016 WL 5800473, at *5–9. In particular, the Court found (i) that Krupinski's "success as an Organizer 'depended not on [his] manual dexterity or physical talents,' but on his interpersonal skills and knack for identifying and developing target workers," *id.* at *5 (quoting *Savage v. UNITE HERE*, No. 05-cv-10812 (LTS), 2008 WL 1790402, at *6 (S.D.N.Y. Apr. 17, 2008)); (ii) that "Krupinski's work – participating in and helping to run LEROF's organizing campaigns – primarily contributed to the running or servicing of LEROF's core mission, which is to organize non-union workers to increase membership for the local unions and thus increase market share for LIUNA as a whole," *id.* at *7 (citations omitted); and (iii) that "[i]n gauging workers' interest, deciding which workers to target for further persuasion, assessing how best to approach individual workers and members of the public, departing from his script when appropriate, and making recommendations to supervisors about where to conduct house calls and

8

whether to report legal violations at jobsites, . . . Krupinski exercised independent judgment in a variety of ways, and that he did so while carrying out major assignments in conducting the operations of LEROF," *id.* at *9. The Court thus concluded that Krupinski's work as an Organizer for LEROF indisputably satisfied the second and third elements of the test for a bona fide administrative employee. *Id.* at *8, 9.

Finally, the Court's resolution of the "primary duty" and "discretion and independent judgment" issues in *Krupinski I* was necessary to support the judgment in favor of LEROF, since the administrative employee test is conjunctive – LEROF had to establish both elements in order to prevail on summary judgment. In sum, Krupinski has already litigated the "primary duty" and "discretion and independent judgment" issues once before, and lost. He cannot now attempt to relitigate them via the expedient of asserting claims under state rather than federal law. Krupinski is therefore collaterally estopped from arguing that he did not meet the "primary duty" and "discretion and independent judgment" requirements of the NYLL's bona fide administrative employee exemption.

The only unresolved issue presented here, then, is whether Krupinski met the NYLL's additional fourth requirement by "performing, under only general supervision, work along specialized or technical lines requiring special training, experience, or knowledge" when he worked as an Organizer for LEROF. 12 NYCRR § 142–2.14(c)(4)(ii)(c). Notably, a number of district courts in this circuit have ignored this fourth element, suggesting that it contributes nothing substantive to the rest of the test. *See, e.g.*, *Kahn v. Superior Chicken & Ribs, Inc.*, 331 F. Supp. 2d 115, 117 n.1 (E.D.N.Y. 2004) (noting that FLSA's and NYLL's definitions of "administrative employee" are "nearly identical" and "assum[ing]" that they should be interpreted to establish identical requirements); *Karropoulos v. Soup du Jour, Ltd.*, 128 F. Supp. 3d 518, 527 (E.D.N.Y.

9

2015) ("[T]he Court's analysis of the exemptions with regard to the Plaintiff's FLSA claims will also apply to the Plaintiff's NYLL claims."); *Gorey v. Manheim Servs. Corp.*, 788 F. Supp. 2d 200, 205 (S.D.N.Y. 2011) ("New York law governing overtime pay is defined and applied in the same manner as the FLSA."); *Scarpinato v. E. Hampton Point Mgmt. Corp.*, No. 12-cv-3681 (JFB) (GRB), 2013 WL 5202656, at *3 (E.D.N.Y. Sept. 13, 2013) (adopting report and recommendation finding that "[b]ecause N.Y.L.L. applies the same exemptions as the FLSA to overtime pay . . . [plaintiff's] N.Y.L.L. claim could not prevail"). Indeed, the Second Circuit seems to have endorsed this approach, albeit tacitly. *See Ramos*, 687 F.3d at 556 n.1 ("Like the FLSA, the NYLL 'mandates overtime pay and applies the same exemptions as the FLSA.'" (quoting *Reiseck*, 591 F.3d at 105)). Nonetheless, because it is a distinct element of the NYLL's administrative employee exemption, and because the parties have specifically briefed the issue, the Court will consider the "special training, experience, or knowledge" requirement in connection with Krupinski's work for LEROF.

LEROF argues that Krupinski's work as an Organizer easily satisfies this requirement because he and other Organizers "attended specialized training sponsored by LEROF in basic labor law, union history, politics, economics, and organizing techniques" and had the opportunity to attend further training sessions offered through LEROF University, Cornell University's Industrial Labor Relations School, and other organizations. (Def. Mem. at 20.) In addition, LEROF contends that it relied on Krupinski and other Organizers to put their specialized knowledge of labor relations, organizing techniques, and labor law to use while running demonstrations. (Reply at 5.) Krupinski responds (i) by pointing out that he did not actually avail himself of all the opportunities for further training and (ii) by continuing to insist on the "repetitive" nature of his work and the "superficial" character of the training that he did attend. (Pl. Mem. at 13.)

The Court once again finds that the undisputed facts favor LEROF's position. Indeed, however basic Krupinski's initial training may have been, it was still "special training" intended to impart "special knowledge" about the particular needs and nature of LEROF, LIUNA, and the general business of labor organizing. Furthermore, the fact that Krupinski was fired before he was able to take advantage of LEROF's more advanced training options – the record indicates that he wanted to attend "labor college" (Pl. Depo. 47:23–25) – does not mean that the training he did receive was not "special" or that the work he performed was not "specialized." Instead, the availability of more advanced training demonstrates that Organizers like Krupinski were engaged in a kind of specialized work in which they were expected to continue to build on their initial basic training. And the record leaves no doubt that Krupinski relied on his basic training in labor law, union history, and organizing techniques while, for example, "trying to organize" "non-union guys" by "telling them" about the "[b]enefits" of being a member of LIUNA (*id.* 28:2–21), seeking to "eliminate as many as possible non-union comparisons on the market" (*id.* 24:11–18), and identifying and reporting on potential health code and other legal violations at non-union job sites (*id.* 39:14–24). In sum, the Court finds that Krupinski "performed, under only general supervision, work along specialized . . . lines requiring special training, experience, [and] knowledge" when he worked as an Organizer. Consequently, LEROF has established the fourth and final element of the NYLL's administrative exemption test.

Therefore, since the Court finds that Krupinski was an exempt administrative employee as a matter of law, LEROF is entitled to summary judgment on Krupinski's claim for overtime wages under the NYLL.

B. WTPA Claim

Krupinski also asserts a claim under the pay-notice provision of the WTPA. Effective April 9, 2011 and extending through December 29, 2014, the WTPA required every employer to "provide his or her employees, . . . [1] at the time of hiring, and [2] on or before February first of each subsequent year of the employee's employment . . . , a notice containing [information about] rates of pay . . . ." 2010 Sess. Law News of N.Y. Ch. 564. The undisputed facts show that LEROF never provided Krupinski with such a notice. (Def. 56.1 ¶ 28; Pl. 56.1 ¶ 105.) Krupinski therefore seeks statutory damages under Section 198 of the WTPA, which provides certain remedies for an employer's failure to comply with the pay-notice provision. *See* N.Y. Lab. Law § 198(1)(b).

However, because LEROF hired Krupinski before the date that the WTPA became effective (Def. 56.1 ¶ 28 (specifying hiring date of June 2, 2010)), he was not entitled to receive a pay notice "at the time of hiring." *See, e.g.*, *Franco v. Jubilee First Ave. Corp.*, No. 14-cv-07729 (SN), 2016 WL 4487788, at *13 (S.D.N.Y. Aug. 25, 2016) ("Employees who began working before the WTPA took effect on April 9, 2011 . . . are not entitled to bring a claim for an employer's failure to provide notice[.]"); *Canelas v. A'Mangiare Inc.*, 13-cv-3630 (VB), 2015 WL 2330476, at *5 (S.D.N.Y. May 14, 2015) (same). As a result, Krupinski cannot seek statutory damages under Section 198 for LEROF's failure to provide him with a pay notice when he was first hired.

And although Krupinski was entitled to receive an annual pay notice from LEROF "on or before February first of each subsequent year" of his employment, Section 198 provides only the Commissioner of Labor, not employees themselves, with a cause of action to enforce that particular sub-provision. *Compare* N.Y. Lab. Law § 198(1)(b), ¶ 1 (creating private cause of action for "employee" to recover damages for employer's failure to provide notice "within ten business days of his or her first day of employment"), *with id.* ¶ 2 (creating cause of action for Commissioner to bring "[o]n behalf of any employee not provided a notice as required by [the

WTPA]"). Consequently, notwithstanding the fact that LEROF admittedly violated the annual notice sub-provision of the WTPA, Section 198 does not permit Krupinski himself to seek statutory damages for LEROF's violation.

Without offering much in the way of statutory analysis, Krupinski resists this reading of Section 198 and points to a handful of cases in which employees recovered statutory damages for an employer's failure to comply with the annual notice provision. (*See* Pl. Mem. at 14.) The Court's reading of Section 198, however, tracks that of other courts in this circuit that have expressly considered whether the WTPA confers a private right of action for violations of that provision. *See, e.g.*, *Yuquilema v. Manhattan's Hero Corp.*, No. 13-cv-461 (WHP) (JLC), 2014 WL 4207106, at *11 (S.D.N.Y. Aug. 20, 2014), *report and recommendation adopted*, No. 13-cv-461, 2014 WL 5039428 (S.D.N.Y. Sept. 30, 2014) ("Oddly, the NYLL extends this private cause of action to employees whose employer fails to provide the initial notice at their hire, but not for subsequent failures to furnish the annual notice in following years."); *Guan Ming Lin v. Benihana N.Y. Corp.*, No. 10-cv-1335 (RA) (JCF), 2012 WL 7620734, at *7–8 (S.D.N.Y. Oct. 23, 2012), *report and recommendation adopted*, No. 10-cv-1335 (RA), 2013 WL 829098 (S.D.N.Y. Feb. 27, 2013) ("The plain language of the statute . . . confers a private right of action upon those who do not receive their notice at the time of hiring, but not upon those who do not receive it on or before February first of any subsequent year."); *Hinckley v. Seagate Hosp. Grp., LLC*, No. 16-cv-6118 (CJS), 2016 WL 6524314, at *9 (W.D.N.Y. Nov. 3, 2016) ("[T]he NYLL does not provide a private right of action where an employer fails to provide annual notices; rather, it only provides such a private right of action where the employer fails to provide the notice at the time of hire."). By contrast, in the few cases that have allowed employees to recover statutory damages, the deciding courts appear to have simply not considered whether Section 198 provided the employees

with a private right of action. *See Zhi Yong Zheng v. Nanatori Japanese Rest. Corp.*, No. 15-cv-1222 (RJD) (RML), 2017 WL 758489, at *5 (E.D.N.Y. Jan. 9, 2017); *Inclan v. N.Y. Hosp. Grp., Inc.*, 95 F. Supp. 3d 490, 502 (S.D.N.Y. 2015). Put simply, Krupinski offers no convincing reason, and the Court finds none, to depart from the most natural reading of Section 198, which creates a limited private right of action for employees to enforce the initial pay notice requirement of the WTPA but authorizes only the Commissioner to enforce the annual pay notice requirement.

Perhaps recognizing that the plain language of Section 198 is against him, Krupinski urges the Court, in the alternative, to find an implied private right of action for statutory damages for employees hired before April 9, 2011 who did not receive annual pay notices. (Pl. Mem. at 15.) The Court declines to do so. Under New York law, courts consider three factors when determining whether a statute implies a private right of action: "(1) whether the plaintiff is one of the class for whose particular benefit the statute was enacted; (2) whether recognition of a private right of action would promote the legislative purpose; and (3) whether creation of such a right would be consistent with the legislative scheme." *Sheehy v. Big Flats Cmty. Day, Inc.*, 73 N.Y.2d 629, 633 (1989). The third factor is the "most critical," *Mark G. v. Sabol*, 93 N.Y.2d 710, 720 (1999), and is determinative here. Courts applying New York law have repeatedly emphasized the legislature's "plenary authority" over both statutory ends and means – that is, "over [the] choice of goals and the methods to effectuate them." *People ex rel. Spitzer v. Grasso*, 836 N.Y.S.2d 40, 48 (2007), *aff'd*, 11 N.Y.3d 64 (2008). Particularly where the legislature has specified its choice of means by designing a complex enforcement scheme, courts should hesitate to tinker with the statutory mechanism. *See Sheehy*, 73 N.Y.2d at 636 ("Where the Legislature has not been completely silent but has instead made express provision for civil remedy, albeit a narrower remedy than the plaintiff might wish, the courts should ordinarily not attempt to fashion a different remedy, with broader

14

coverage . . . ."); *Mark G.*, 93 N.Y.2d at 720 (no implied right of action where "[t]he Legislature specifically considered and expressly provided for enforcement mechanisms"). Here, the WTPA boasts just such a complex enforcement scheme: the statute includes a detailed remedies provision that authorizes private plaintiffs to sue for certain violations and empowers the Commissioner to bring judicial or administrative actions for others. *See* N.Y. Lab. Law § 198. It is not for the Court to inquire into the policy wisdom of the legislature's choice to entrust the Commissioner alone with certain causes of action. All that matters here is that the choice appears to have been deliberate, part of a larger design that should not be lightly modified. In short, because the Court finds that an implied private right of action is inconsistent with the WTPA's explicit enforcement scheme, it denies Krupinski's request to recognize one here. LEROF is therefore also entitled to summary judgment on Krupinski's claim for statutory damages under the WTPA.

IV. CONCLUSION

For the reasons set forth above, IT IS HEREBY ORDERED THAT Defendant's motion for summary judgment is GRANTED, and Plaintiff's cross-motion is DENIED. The Clerk of Court is respectfully directed to terminate the motions pending at docket numbers 12 and 17, enter judgment in favor of Defendant, and close this case.

SO ORDERED.

Dated:  July 31, 2017
        New York, New York

RICHARD J. SULLIVAN
UNITED STATES DISTRICT JUDGE